UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

RAY SHOEMAKER AND RURAL HEALTHCARE
DEVELOPERS OF MISSISSIPPI, INC.                                    PLAINTIFFS

V.                                                    CIVIL ACTION NO. 3:09CV645-DPJ-FKB

ROBERT L. ROBINSON AND MICHAEL L. MORGAN                  DEFENDANTS

## ORDER

This § 1983 action is before the Court on Defendant Robert L. Robinson's motion to

dismiss [33] or alternatively for summary judgment [34].  Plaintiffs Ray Shoemaker and Rural

Healthcare Developers of Mississippi, Inc. responded in opposition by moving for a continuance

[36] pursuant to (former) Federal Rule of Civil Procedure 56(f).  The Court, having considered

the submissions of the parties and the pertinent authorities, finds that Plaintiffs' motion should

be denied and Defendant's motion should be granted in part and denied in part as set forth

herein.

I.      Facts and Procedural History[1]

Ray Shoemaker is the president of Rural Healthcare Developers of Mississippi, a

healthcare management company.  Shoemaker previously served as an administrator for Tri-

Lakes Hospital in Batesville, Mississippi.  Long after Shoemaker left Tri-Lakes, the hospital

filed for bankruptcy, and the Mississippi Division of Medicaid and its executive director, Robert

L. Robinson, presented a claim seeking repayment of monies paid to Tri-Lakes.  This claim

stemmed from Medicaid's earlier review of Tri-Lakes's records and a finding that it had

---

[1]The summary of the facts is gleaned from Plaintiffs' Complaint [1] and Rule 7 Reply
[30].

overpaid Tri-Lakes.  For its part, Tri-Lakes disputed the claim, believing it was owed money from Medicaid due to underpayment of Medicaid claims.  A settlement was reached between Medicaid and Tri-Lakes in which Medicaid agreed to pay Tri-Lakes a certain sum.  As part of the agreement, several individuals, including Shoemaker, were precluded from having a management or pecuniary interest in Tri-Lakes.  Shoemaker insists that he did nothing wrong during his association with Tri-Lakes.

After execution of the settlement agreement, Shoemaker avers that Robinson defamed him by communicating to third parties that they should refrain from doing business with him. Shoemaker asserts that such defamatory comments caused a potential client, a hospital in Natchez, Mississippi, to cancel a meeting in August 2009 to discuss a possible contract for services.  Shoemaker also alleges that he has been denied business financing opportunities as a result of Robinson's defamatory comments to the USDA Business and Cooperative Service and Union Bank.

Plaintiffs filed this action against Robinson, in his individual capacity only, in the Circuit Court of Hinds County, Mississippi, asserting both federal and state-law claims.[2]  First, Shoemaker alleges that Robinson, through his negotiation of the settlement agreement, deprived Shoemaker of his property rights without due process of law.  Second, Shoemaker contends that Robinson's post-agreement defamatory remarks violated Shoemaker's liberty interest and contractual freedom.  Plaintiffs' Complaint also includes state-law claims of defamation,

---

[2]Shoemaker and his company, Rural Healthcare Developers of Mississippi, Inc., filed this suit against Robinson and Michael L. Morgan.  The motion to dismiss was filed only by Robinson, and there is no allegation that Morgan is a state actor.  Because this Order primarily addresses the § 1983 constitutional claims, the Court focuses its attention on Shoemaker and Robinson.

intentional interference with business relations, and intentional infliction of emotional distress. Robinson removed the case to this Court, citing federal question jurisdiction based on Plaintiffs' allegations of constitutional violations.

Following removal, Robinson moved to dismiss, or alternatively for summary judgment, as to all claims. Although Plaintiffs moved for a continuance to allow discovery, the Court finds, for reasons explained below, that such a continuance is not appropriate. Having fully considered the parties' submissions and the applicable law, the Court finds that Plaintiffs' federal claims should be dismissed. The Court declines to exercise jurisdiction over the remaining state law claims, opting instead to remand the case to state court.

II.     Applicable Standards

        A.      Motion to Dismiss

        Defendant Robinson filed the instant motion to dismiss, or alternatively for summary judgment, and attached his own affidavit. In response, Shoemaker attached his own affidavit and moved the Court to allow discovery pursuant to (former) Rule 56(f). Rule 12(d) describes the process by which courts can convert a motion under Rule 12(b)(6) to a motion for summary judgment under Rule 56. In this instance, this Court exercises its discretion to exclude the evidence offered outside the pleadings and treat the motion as one arising under Rule 12(b)(6). *See Gen. Retail Servs., Inc. v. Wireless Toyz Franchise*, LLC, 255 F. App'x 775, 783 (5th Cir. 2007) ("It is well known that when 'matters outside the pleading' are presented with a motion to dismiss under Rule 12(b)(6), a district court has complete discretion to either accept or exclude the evidence." (citing *Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 193 (5th Cir. 1988); Fed. R. Civ. P. 12(b))).

In considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)). To overcome a Rule 12(b)(6) motion, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, ---U.S. ----, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

B.     Qualified Immunity

Shoemaker filed this action against Robinson in his individual capacity only, and Robinson's motion to dismiss is based in part on qualified immunity. Qualified immunity is a shield from individual liability for "'government officials performing discretionary functions . . . as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Good v. Curtis*, 601 F.3d 393, 400 (5th Cir. 2010) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). "[Q]ualified immunity generally protects 'all but the

plainly incompetent or those who knowingly violate the law.'"  *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

When a defendant asserts qualified immunity, the plaintiff has the burden to rebut the defense.  *Hampton v. Oktibbeha Cnty. Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007).  Courts use a two-step analysis to determine whether qualified immunity applies.  "[A] court addressing a claim of qualified immunity must determine first whether the plaintiff has adduced facts sufficient to establish a constitutional or statutory violation."  *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  Second, if a violation has been alleged, the court must determine "'whether [the officers'] actions were objectively unreasonable in light of clearly established law at the time of the conduct in question.'"  *Id.* (quoting *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007)).  It is within the lower court's discretion to decide which prong of the qualified immunity analysis to address first. *Collier*, 569 F.3d at 217 (quoting *Pearson v. Callahan*, --- U.S. ----, ----, 129 S. Ct. 808, 818 (2009)).  In particular, *Pearson* observed that "there are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right."  129 S. Ct. at 818.

 "The defendant's acts are held to be objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff."  *Thompson v. Upshur Cnty, Tex.*, 245 F.3d 447, 457 (5th Cir. 2001).  "An official is eligible for qualified immunity even if the official violated another's constitutional rights."  *Id.*  The objective

reasonableness of official action is an issue of law reserved for the court. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999).

C.      Motion for Continuance

In response to the motion to dismiss, Plaintiffs requested discovery pursuant to (former) Rule 56(f). "The decision to grant or deny a Rule 56(f) motion is within the sound discretion of the district court." *Johnson v. Hinds Cnty., Miss.*, 237 F.3d 632, No. 00-60098, 2000 WL 1701835, at *1 (5th Cir. Nov. 3, 2000) (unpublished table decision). Shoemaker's request for discovery pursuant to (former) Rule 56(f) is denied, in part because of the Court's decision not to accept the evidence attached to Robinson's motion. In addition, it is recognized that qualified immunity protects public officials not just from liability but also from the burdens of litigation. *Manis ex rel. Plaisance v. Lawson*, --- F.3d ----, No. 08-30987, 2009 WL 3298078, at *2 (5th Cir. Oct. 15, 2009) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *see also Brown v. Texas A & M Univ.*, 804 F.2d 327, 333 (5th Cir. 1986) ("[T]he issue of qualified immunity is a threshold question, and '[u]ntil this threshold immunity question is resolved, discovery should not be allowed.'"). Finally, Plaintiffs' motion does not comply with Rule 56(f), or newly applicable Rule 56(d), because they did not attach a supporting affidavit or declaration.

To summarize, Robinson's motion and his attendant plea for qualified immunity will be considered under the Rule 12(b)(6) standard. The Court has before it Plaintiffs' Complaint and their Rule 7 *Schultea* reply specifically addressing the issue of qualified immunity. *Schultea v.*

6

*Wood*, 47 F.3d 1427 (5th Cir. 1995).  Plaintiffs also addressed the substance of Robinson's

motion to dismiss in their motion for a Rule 56(f) continuance [37] and rebuttal in support [39].

III.     Analysis

        A.      Constitutional Claims

        Shoemaker asserts that Robinson deprived him of his property and liberty interests

without due process.  "To state a Fourteenth Amendment due process claim under § 1983, 'a

plaintiff must first identify a protected life, liberty or property interest and then prove that

governmental action resulted in a deprivation of that interest.'"  *Gentilello v. Rege*, 627 F.3d 540,

544 (5th Cir. 2010) (quoting *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001)).

        1.      Property Interest

        Shoemaker states in his Complaint that the settlement affected a property interest because

it barred him "from any management or pecuniary interest in Tri-Lakes."  Compl. ¶¶4.8, 4.9,

4.12.  Shoemaker also seems to assert a property interest when he claims that the bar on future

employment at Tri-Lakes constituted a sanction under the Medicaid program.  *Id*. ¶ 4.18.

Finally, the Complaint states "a property interest in future transactions or employment."  *Id*. ¶

4.10.  All of these claimed property interests appear to be premised on the ban from returning to

Shoemaker's former position with Tri-Lakes.[3]

_____

        [3]Shoemaker describes another property interest in his Rule 7 Reply as follows:

        The statutes and regulations governing the operation of the Medicaid program
        provide protections that limit the reasons for and the means by which a provider
        may be excluded from participation in Medicaid.  These procedural protections
        evidence the fact that the expectation of continued participation in the Medicaid
        program is a property interest protected by due process.

Rule 7 Reply ¶ 6.  Shoemaker makes no reference to this theory in his summary judgment

"To enjoy a property interest in employment, an employee must 'have a legitimate claim of entitlement' created and defined 'by existing rules or understandings that stem from an independent source such as state law.'"   *Gentilello*, 627 F.3d at 544 (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)).   Here, according to the Complaint, Shoemaker left Tri-Lakes before Tri-Lakes filed bankruptcy and later entered the settlement agreement with Medicaid. Compl. ¶ 3.3.   It is difficult to imagine how Shoemaker maintained a property interest in managing Tri-Lakes *after* he left Tri-Lakes' employment.

The Fifth Circuit Court of Appeals considered a similar situation in *Vander Zee v. Reno*, 73 F.3d 1365 (5th Cir. 1996).   Vander Zee served as executive vice-president of a national bank. He resigned from the bank after being charged with money laundering, but was ultimately acquitted.   In a related forfeiture action, the government entered a settlement agreement with the bank, which allowed the bank to retain certain certificates of deposit, but prohibited the bank from rehiring Vander Zee in any capacity.   Like Shoemaker, Vander Zee sued the government officials involved in the settlement agreement in their individual capacities, claiming violations of his liberty and property interests.   Unlike Shoemaker, Vander Zee claimed to have an oral agreement for re-employment with the bank.   Nevertheless, the Fifth Circuit affirmed dismissal of the property interest claim, finding that "[t]he defendants could not have interfered with any protected property interest that Vander Zee may have possessed in his former position with [the bank] as he had already resigned from the bank as of the date of the settlement."   *Id*. at 1370.   In

Response, and the contention that he was cut out of the Medicaid program altogether is not factually supported in his Complaint or Rule 7 Reply.  Moreover, the cases cited in his Rule 7 Reply are distinguishable.  Thus, if this argument has not been abandoned, it is not availing.

sum, Shoemaker has not shown that he enjoyed a property interest in employment with Tri-Lakes Hospital as required to pursue a § 1983 deprivation claim.

2.      Liberty Interest

Shoemaker also avers that Robinson's defamatory comments following execution of the settlement agreement deprived him of his liberty interests.  Shoemaker alleges that Robinson informed third parties that he is responsible for the problems which allegedly occurred at Tri-Lakes Hospital and these third parties should refrain from doing business with him.  Rule 7 Reply at 6-7.  As a result, Shoemaker claims that his "business reputation" has been damaged.  Complaint ¶ 3.8.  Specifically, a Natchez hospital cancelled a meeting to discuss a possible contract, and he was denied business financing opportunities.  Compl. ¶ 4.22.; Rule 7 Reply ¶ 15.

 "[M]ere injury to reputation, even if defamatory, does not constitute the deprivation of a liberty interest."  *Finch v. Fort Bend Indep. Sch. Dist.*, 333 F.3d 555, 561 n.3 (5th Cir. 2003).  But "a plaintiff may assert a constitutional violation by alleging a stigma 'plus an infringement of some other interest'"— the so-called "stigma-plus" theory.  *Tebo v. Tebo*, 550 F.3d 492, 503 (5th Cir. 2008) (quoting *Blackburn v. City of Marshall*, 42 F.3d 925, 936 (5th Cir.1995)).  "This test permits recovery under § 1983 when a claimant shows that the government, through defamation, 'sought to remove or significantly alter a life, liberty, or property interest recognized and protected by state law or one of the incorporated provisions of the Bill of Rights.'"  *Thinkstream, Inc. v. Adams*, 251 F. App'x 282, 284 (5th Cir. 2007).

Even assuming Shoemaker satisfies the stigma prong, he has not alleged the deprivation of a protected interest.  Looking once more to the decision in *Vander Zee*, the Fifth Circuit likewise affirmed dismissal of Vander Zee's liberty interest claim.  Vander Zee contended that

9

the defamation interfered with his "freedom of choice in the job market."  73 F.3d at 1369.[4]  The

court noted that "[n]either harm to reputation nor the *consequent impairment of future*

*employment opportunities* are constitutionally cognizable injuries."  *Id.* (emphasis added) (citing

*Siegert v. Gilley*, 500 U.S. 226, 234 (1991) ("But so long as such damage flows from injury

caused by the defendant to a plaintiff's reputation, it may be recoverable under state tort law but

it is not recoverable in a *Bivens* action.")); *see also Thinkstream, Inc.*, 251 F. App'x at 284

(remarking that "the loss of future employment opportunities does not typically qualify as . . .

'tangible interest'"); *Walker v. Wilson*, 67 F. App'x 854, 856-57 (6th Cir. 2003) (observing that

"injury to reputation does not violate a protected liberty interest" and "[e]ven an allegation of

diminished employment opportunities resulting from harm to reputation is insufficient to state a

due process claim").

　　　　Shoemaker also attempts to frame his claim using the *de facto* licensing approach applied

in *Phillips v. Vandygriff*, 711 F.2d 1217 (5th Cir. 1983), but his argument is not well-taken.

There, the plaintiff averred he could not secure a position in *any* bank because the Commissioner

of the Texas Savings and Loan Department repeatedly slandered him.  *Id.* at 1220.  The court

agreed that Phillips stated a liberty interest because "[n]o savings and loan would employ anyone

in a managerial position without [the Commissioner's] approval."  *Id.* at 1222.  By contrast,

Shoemaker obtained employment as President of Patient's Choice Medical Center of Humphreys

County, LLC after Tri-Lakes executed the settlement agreement, and he remained in that

position as of the filing of the Complaint and Rule 7 Reply.  *See* Compl. ¶ 3.1; Rule 7 Reply ¶

18, Affidavit ¶ 5.

---

[4]Shoemaker phrases this same point as an interference with his right to contract.

10

In any event, the factual averments of the Complaint and Rule 7 Reply fail to suggest that Shoemaker has been barred from employment in the same way as Phillips.  Because the alleged defamatory statements have not prevented Shoemaker from finding any employment, this is not a *de facto* licensing case.  *See Vander Zee*, 73 F.3d at 1370 (distinguishing the plaintiff's claim from a *de facto* licensing case because the settlement agreement at issue only precluded employment at one financial institution); *see also Connelly v. Comptroller of the Currency*, 876 F.2d 1209, 1214 (5th Cir. 1989) (rejecting *de facto* licensing argument where plaintiff had obtained employment in his field).  In sum, Shoemaker failed to allege facts sufficient to make out a deprivation of a protected liberty interest.

### 3.     Qualified Immunity

That said, even if Shoemaker had alleged an arguable deprivation of a property or liberty interest, the Court finds Robinson's conduct was not objectively unreasonable in light of clearly established law.  Thus he is entitled to qualified immunity.  *Thompson*, 245 F.3d at 456–57.  In considering qualified immunity, the Court looks to the specific circumstances of the alleged constitutional violation.  *Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 383 n. 1 (5th Cir. 2009).  While finding authority in the exact factual context is not required, "unless the violation is obvious, there must be relevant case law that squarely governs the situation with which the [defendants] were presented and gives fair notice that such conduct would violate the law." *Reyes v. Bridgwater*, 362 F. App'x 403, 408 (5th Cir. 2010) (citations and quotations omitted) (considering qualified immunity in context of excessive force claim).  Plaintiffs cited no cases supporting a claim that suspension from a particular healthcare facility impinges on a property right or that diminished employment opportunities are recoverable as a deprivation of a liberty

interest.  Moreover, given *Vander Zee* and *Connelly*, a reasonable official would not be on notice that the alleged acts violated clearly established constitutional rights.  73 F.3d at 1369-71; 876 F.2d at 1212-15.  Robinson is entitled to qualified immunity.

        4.     Civil Conspiracy

Plaintiffs included in their Complaint a count titled "Civil Conspiracy" and mentioned § 1983.  Complaint at 9-10.   To support a § 1983 conspiracy claim, Plaintiffs must allege facts that suggest: "1) an agreement between the private and public defendants to commit an illegal act and 2) an actual deprivation of constitutional rights."  *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994) (internal citations omitted).  Because the Court finds that Plaintiffs have failed to allege a deprivation of constitutional rights, any § 1983 conspiracy claim is due to be dismissed.

        B.     State Law Claims

Having dismissed the only claims for which this Court had original jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims.  *See* 28 U.S.C. § 1367(c)(3) (providing that a district court may decline to exercise supplemental jurisdiction over a claim if it "has dismissed all claims over which it has original jurisdiction").  This matter has not proceeded to full discovery, the issues are now based on state law, and exercising supplemental jurisdiction would not serve the purposes of judicial economy, convenience, fairness, and comity.  *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).  Accordingly, because this action was removed to federal court, the Court remands Plaintiffs' state law claims to state court.

IV.     Conclusion

Based on the foregoing, the Court finds that Plaintiffs' motion for a continuance should be denied and Defendant Robinson's motion to dismiss (or alternatively for summary judgment) should be granted in part and denied in part.  Plaintiffs' constitutional claims are dismissed. Plaintiffs' state law claims remain pending, and this case is remanded to the Circuit Court of Hinds County, First Judicial District, for consideration of those claims.

**SO ORDERED AND ADJUDGED** this the 16th day of February, 2011.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE